IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SPORTS AT WORK ENTERPRISES, INC. | § § § | |
| Plaintiff, | § § | NO. 3-05-CV-2413-BD |
| VS. | § § | |
| HOWARD SILBER, ET AL. | § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sports At Work Enterprises, Inc. ("Sports At Work") has filed a motion to remand this declaratory judgment and wrongful garnishment action to Texas state court. [Doc. #14]. For the reasons stated herein, the motion is denied.

I.

This suit arises from two writs of garnishment issued by this court at the request of Howard Silber, Individually and d/b/a Pacific Sports & Entertainment ("Silber"), as part of his efforts to collect a federal judgment against Steve Weinberg and Steve Weinberg & Associates, Inc. ("Weinberg"). In June 1998, Silber and Weinberg entered into an oral agreement to represent some 51 professional athletes, including Stephen Davis, a running back for the Washington Redskins. Although the terms of their agreement were never memorialized in writing, Silber and Weinberg purportedly agreed to share equally in all expenses incurred in recruiting clients and in commissions of up to 3% of the clients' compensation. When the joint venture dissolved, Weinberg filed suit in Texas state court. Silber timely removed the case to federal court. The parties subsequently agreed to arbitrate their dispute. Following a hearing in March 2000, the arbitrator ordered that Silber and

Weinberg "split" all fees earned on Davis' 1999 and 2000 contracts. The 2000 contract extended for eight years and was valued at approximately $135 million. The 3% agent's commission amounted to over $4 million.

On November 9, 2000, Silber filed a motion in the pending federal lawsuit to confirm the arbitration award. Weinberg countered with a motion to vacate the award. After 14 months of protracted litigation, including a limited remand to the arbitrator for the purpose of making specific corrections and clarifications to the award, the court confirmed the amended arbitration award and ordered Weinberg to pay Silber:

> the sum specified in the Clarified Arbitration Award that was confirmed by this Court. That sum is to include: the agent's fees already owed from Stephen Davis' 1999 and 2000 NFL contracts ($95, 010.00), the amount (1.5% of earnings) under the NFL contracts for the 2001 through 2008 seasons (up to a total of $2,031,750.00), attorney's fees in the amount of $28,500.00, pre-judgment interest in the amount of $8,275.20, and post-judgment interest at the rate of 2.24% per annum.

*Weinberg v. Silber*, No. 3-99-CV-1432-D (N.D. Tex. Feb. 28, 2002).[1] The final judgment expressly incorporates the terms and conditions of the amended arbitration award, which provides, *inter alia*:

> [W]ith respect to and exclusively for Mr. Davis' 1999 contract, Mr. Weinberg is ordered to pay Mr. Silber a sum of $14,010.00 . . . no later than ten (10) days from the date of this arbitration award.
>
> * * * *
>
> Mr. Weinberg is therefore ordered to pay 1.5% of any amounts currently paid to Mr. Davis under his 2000 through 2008 contract, and such payments are to be made no later than ten (10) days from the date of this Arbitration Award. Thereafter all payments from Mr. Weinberg to Mr. Silber are to be paid no later than ten (10) days from the date Mr. Davis is paid pursuant to the subject 2000 through 2008 contract.

---

[1] The final judgment entered on February 28, 2002 amends a prior judgment entered on January 22, 2002. The only difference between the original judgment and the amended judgment is the post-judgment interest rate.

Wienberg timely appealed the judgment to the Fifth Circuit Court of Appeals.

While this appeal was pending, Silber registered the federal judgment with the Dallas County Clerk as permitted by the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), Tex. Civ. Prac. & Rem. Code § 35.001, *et seq.* That action prompted Weinberg to file a motion to vacate the judgment in Texas state court. At oral argument on the motion, Weinberg advanced one of the arguments he raised on direct appeal--that the federal judgment is inconsistent, ambiguous, and self-contradictory. The state judge took the matter under advisement, but later ruled that the federal judgment was void for vagueness. *Weinberg v. Silber*, No. 02-10945-E (Dallas Co. Ct. at Law #5, Nov. 25, 2002). Silber appealed the ruling, but his appeal was dismissed for want of prosecution after he failed to file a brief. *Silber v. Weinberg*, No. 11-03-CV-00029-CV (Tex. App.--Eastland, Aug. 7, 2003).

On January 6, 2003, just seven weeks after the Texas court vacated the federal judgment, the Fifth Circuit affirmed the very same judgment. In its opinion, the court summarily rejected Weinberg's argument that the judgment was "self-contradictory as to a material term and incapable of compliance." According to the court:

> The amended arbitration award [ ] clearly and unambiguously specifies when payments to Silber are due: Amounts earned on the 1999 contract and any amounts already paid to Weinberg under the 2000-08 contracts are due within ten days of the date of the arbitration award; all other payments are to be paid within ten days of the date that Stephen Davis is paid.
>
> Given the precise terms of the amended arbitration award, the amended final judgment, which is "to conform with the terms and conditions" of the amended award, is neither "self-contradictory" nor invalid. Although the term "sum" as used in the final judgment may be slightly ambiguous, the district court expressly adopted the terms and conditions of the arbitration award, which dictates beyond cavil Weinberg's schedule of payments. Accordingly, Weinberg's argument that the final judgment is "incapable of compliance" is meritless.

*Weinberg v. Silber*, 57 Fed. Appx. 211, 2003 WL 147530 at * 2-3 (5th Cir. Jan. 6, 2003).[2]

After the Fifth Circuit upheld the validity of the federal judgment, Silber filed a garnishment action in federal district court against Burleson Pate & Gibson, L.L.P. ("BP&G"), a Dallas law firm, and Compass Bank ("Compass"), a local financial institution, in an attempt to collect any funds held for Weinberg. *Silber v. Weinberg*, No. 3-04-CV-2199-P (N.D. Tex., filed Oct. 10, 2004). BP&G answered that it was indebted to Weinberg in the amount of $9,758.51, "this sum representing an agent's fee paid into an escrow account by an N.F.L. football player, Erron Kinney." That money was paid to Silber who, in turn, dismissed BP&G from the garnishment suit. Compass denied that it was indebted to Weinberg, but allegedly provided Silber with confidential and proprietary financial records pertaining to Sports At Work, who is not a party to the federal judgment, pursuant to a subpoena duces tecum.[3] Upon receiving notice of the federal garnishment action, Sports At Work, as plaintiff, filed suit against Silber in Texas state court to preclude him from enforcing the federal

---

[2] At oral argument before the Fifth Circuit, Weinberg pointed to another internal "inconsistency" in the arbitration award--that paragraph five of the award, which requires "a split on fees paid only with respect to . . . Stephen Davis," conflicts with paragraph nine of the award, which orders all prospective payments from Weinberg to Silber to be paid within 10 days from the date Stephen Davis is paid. The Fifth Circuit had little difficulty reconciling those two paragraphs:

> Paragraph five sets forth the arbitrator's award in general terms--Weinberg and Silber are to split agent commissions, i.e., "fees paid," with respect to one client, Stephen Davis. Paragraph nine outlines, in detail, the payment arrangement: Weinberg is to pay Silber "1.5% of each dollar earned by Stephen Davis" no later than ten days from the date that <u>Davis</u> is <u>paid</u>. We acknowledge that under this payment plan, any risk of Davis's default is to be shouldered exclusively by Weinberg, whose obligation to Silber is triggered by the Redskins payment to Davis, regardless of whether David in turn pays Weinberg. We nevertheless decline to reexamine either the arbitrator's motive in crafting the payment terms or the merits of the underlying award.

*Weinberg*, 2003 WL 147530 at * 3 (emphasis in original).

[3] Sports At Work contends it is a separate entity that is neither owned nor controlled by Weinberg or Weinberg & Associates, Inc. (Plf. Orig. Pet. at 4, ¶ 10).

judgment. Plaintiff also included claims against Silber, BP&G, and Compass for wrongful garnishment and a separate claim against Compass for the unauthorized disclosure of financial information. BP&G, with the consent of Silber and Compass, timely removed the case to federal court. In its removal notice, BP&G alleges that federal jurisdiction is proper because plaintiff's claims implicate the validity of a federal judgment that was affirmed by the Fifth Circuit and relate to a writ of garnishment issued by a federal district court. (*See* BP&G Not. of Rem. at 2, ¶ 3). Plaintiff now argues that the case should be remanded to Texas state court because, under the "well pleaded complaint" rule, the state court petition does not assert any claims arising under the Constitution or laws of the United States. The motion to remand has been fully briefed by the parties and is ripe for determination.

II.

A case may be removed to federal court if it is "founded on a claim or right arising under the Constitution, treaties or laws of the United States . . ." 28 U.S.C. § 1441(b). The analysis of this statute is controlled by the well-pleaded complaint rule. This rule provides that a "properly pleaded complaint governs the jurisdictional determination, and if, on its face, such a complaint contains no issue of federal law, then there is no federal question jurisdiction." *Aaron v. National Union Fire Insurance Co.*, 876 F.2d 1157, 1160-61 (5th Cir. 1989), *cert. denied*, 110 S.Ct. 1121 (1990); *Flowerette v. Heartland Healthcare Center*, 903 F.Supp. 1042, 1044 (N.D. Tex. 1995) (Kaplan, J.). Stated differently, removal is proper if the complaint establishes: (1) that federal law creates the cause of action; or (2) that the case necessarily depends on a substantial question of federal law in that federal law is a necessary element of one of the well-pleaded claims. *Franchise Tax Board of State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 27-28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983); *see also Christianson v. Colt Industries*

*Operating Corp.*, 486 U.S. 800, 808-09, 108 S.Ct. 2166, 2173-74, 100 L.Ed.2d 811 (1988). This determination must be based on the claims asserted by the plaintiff, "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Franchise Tax Board*, 103 S.Ct. at 2846.

On its face, the state court petition alleges claims arising solely under Texas law. Nevertheless, BP&G and Silber contend that removal is proper because the state court action is nothing more than an attack on the federal judgment. (BP&G Resp. at 2; Silber Resp. at 1-2). The Fifth Circuit has repeatedly held that an action brought in state court to nullify or circumvent a prior federal order or judgment is removable to federal court on the ground that it is founded on a claim or right arising under the laws of the United States. *See, e.g. Royal Insurance Co. of America v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1292 (5th Cir. 1992); *Villarreal v. Brown Express, Inc.*, 529 F.2d 1219, 1221 (5th Cir. 1976); *Deauville Associates v. Lojoy Corp.*, 181 F.2d 5, 6 (5th Cir.), *cert. denied*, 71 S.Ct. 281 (1950). As stated by one judge who confronted a similar issue in a motion to remand:

> It is well settled that a Federal District Court can exercise ancillary jurisdiction over a second action in order "to secure or preserve the fruits and advantages of a judgment or decree rendered" by that court in a prior action. Such jurisdiction is appropriate where the effect of an action filed in State court would "effectively nullify" the judgment of a prior federal action. This is true even where the Federal District Court would not have jurisdiction over the second action if it had been brought as an original suit.

*Lowery v. Foremost Insurance Co.*, No. J-92-0323(B), 1992 WL 366912 (S.D. Miss. Dec. 3, 1992), quoting *Royal Insurance*, 960 F.2d at 1292.

In an attempt to distinguish this case from the authorities cited by BP&G and Silber, plaintiff argues that its state claims are not predicated on whether the federal judgment is valid or invalid.

Rather, plaintiff alleges that "by virtue of the State Court Judgment, Silber is collaterally estopped, under Texas law, to enforce the Federal Court Judgment, regardless of whether it is actually void for vagueness on the merits." (Plf. Reply at 2; *see also* Plf. Orig. Pet. at 7, ¶ 18).[4] Because the issue of collateral estoppel involves a question of state law, plaintiff maintains that there is no basis for removing the case to federal court. Even if the court were to accept this argument with respect to plaintiff's declaratory judgment claim, other claims alleged in the petition clearly implicate the validity of the federal judgment. For example, plaintiff sues Silber, BP&G, and Compass for wrongful garnishment because "*the Federal Court Judgment was void for vagueness and unenforceable* and . . . to the extent [the writ of garnishment] affected funds belonging to Sports at Work, because Sports at Work was not a party to or liable under the Federal Court Judgment." (*See* Plf. Orig. Pet. at 7-8, ¶ 20 & 8, ¶ 22) (emphasis added). The merits of this claim depend, at least in part, on the inherent validity or invalidity of the federal judgment--not the procedural defense of collateral estoppel.

The court has little difficulty in concluding that the civil action brought by plaintiff in Texas state court implicates the validity of a prior federal judgment and relates to a federal writ of garnishment. Under these circumstances, the state case was properly removed to federal court. Plaintiff's motion to remand is denied.

SO ORDERED.

DATED: March 21, 2006.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

---

[4] This collateral estoppel argument is the subject of cross-motions for summary judgment now pending in the federal garnishment action.